## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
## WESTERN DIVISION

KIRBY G. TATE                                          PLAINTIFFS
CHRISTA TATE

VERSUS                          CIVIL ACTION NO. 5:05cv166-DCB-JMR

DOLAN WALLER, THELMA LINDSEY, &                        DEFENDANTS
FRANCIS RANSOM

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendant Francis Ransom's Motion to Dismiss for Failure to Serve Process [**docket entry no. 44**] and the defendants' Motions to Dismiss for Failure to State a Claim and for Summary Judgment [**docket entry no. 53**]. Having reviewed the Motions, briefs, applicable statutory and case law, and being otherwise fully advised as to the premises, the Court finds as follows:

### I. FACTS AND PROCEDURAL HISTORY

At the time the relevant facts occurred, Kirby Tate was an inmate at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi.  On February 10, 2005, Francis Ransom issued a Rules Violation Report ("RVR")[1] to Tate for "refusing to work or encouraging others to refuse to work or participate in work stoppage."  (Compl. 4A.)  The RVR was issued when Tate failed to

---

[1] An RVR is similar to a citation.  After issuance of an RVR, a hearing is held wherein a determination of guilt or innocence is made by the a WCCF disciplinary officer.  If found guilty, the inmate is subject to behavioral modification measures.

report to an assigned vocational technology class taught by Ransom. Tate claims that he and two other inmates missed the class because their housing unit was locked down for a certified count. (Compl. 4.) Although three inmates missed the class, Tate alleges that only he and the other white inmate were given RVRs. (Compl. 4A.) The third inmate, a black man, did not receive an RVR for missing the class.

Upon explaining his absence to Ransom, Tate avers that Ransom agreed to dismiss the RVR; nevertheless, at his RVR hearing, WCCF Disciplinary Officer Thelma Lindsey found Tate guilty of refusing to work. Tate contends that at the RVR hearing Lindsey told him that she disliked him and thought him to be a troublemaker. (Compl. 4B.) She also allegedly refused to permit him to call Ransom as a witness and told Tate she would "find a verdict of guilt regardless." (Compl. 4A-4B.) As punishment for missing the vo-tech class, Tate's visitation rights were revoked and he was reclassified from a "B-custody" inmate to a "C-custody" inmate for one month. Tate then filed a "sensitive issue" Administrative Remedy Program ("ARP") grievance with Mississippi Department of Corrections ("MDOC") Commissioner Christopher Epps. In his ARP document, Tate alleged a pattern of racial discrimination by the WCCF staff. Epps forwarded the ARP grievance to Glenn Spann, the MDOC ARP Administrator, who transmitted it to Lindsey. Tate contends the ARP grievance allegations became known by the WCCF

staff and that he was consequently fired from his job and singled out for repeated urinalysis testing.  (Compl. 4C.)  Tate filed this action on September 6, 2005, pleading the following claims:  (1) racial discrimination by Francis Ransom for issuing RVRs only to white inmates, (2) malicious prosecution by Thelma Lindsey, (3) negligence by WCCF Warden Dolan Waller for allowing the alleged misconduct to occur, and (4) negligence by Christopher Epps and Glenn Spann for violating MDOC policy and exposing the ARP grievance to WCCF personnel.  (Compl. 4C-4D.)

On June 16, 2006, Tate filed an amendment to his complaint, wherein he additionally alleges that:  the defendants failed to follow correct ARP procedures; because he sought relief via the ARP grievance, the defendants retaliated against him by issuing RVRs without factual bases; the defendants' actions caused him to be deprived of visitation, conjugal visits, telephone calls, and his job; the defendants' conduct led to additional punishments, including placement in a behavioral modification program and a prolonged "C- custody" classification, and; the defendants engaged in a pattern of abuse of MDOC policy and procedure, for which he seeks injunctive relief.  (Am. Compl. ¶¶ 1-4, 6.)  Tate's wife, Christa Tate, was joined as a plaintiff and seeks $12,000.00 in damages for loss of consortium.  (Am. Compl. ¶¶ 5, 7.)

On July 21, 2006, Epps and Spann moved for summary judgment, which was granted by this Court on October 31, 2006.  On March 2,

3

2007, Ransom filed a Motion to Dismiss for Failure to Serve Process.  Upon completion of discovery, the three remaining defendants (Ransom, Lindsey, and Waller) filed Motions to Dismiss for Failure to State a Claim and for Summary Judgment on April 13, 2007.  These three Motions are now before the Court.[2]

## II. ANALYSIS

### A. Defendant Ransom's Motion to Dismiss for Failure to Serve Process

In his Motion, Ransom claims that he has neither waived service of process under Federal Rule of Civil Procedure 4(d) nor been personally served with process under Federal Rule of Civil Procedure 4(e) by either plaintiff.  (Mot. Dis. Fail. Serve Proc. ¶ 4.)  Therefore, because the Rule 4(m) 120 day window for service of process has expired, he should be dismissed from the action pursuant to Rule 12(b)(5).  (Mot. Dis. Fail. Serve Proc. ¶ 5.)

1. Timeliness of Ransom's Motion

As a threshold matter, the Court points out that Ransom's Motion is untimely under Rule 12(b), given that "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted."  Fed. R. Civ. P. 12(b); see also Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (noting that "[b]ecause a rule 12(b) motion must be filed before responsive

---

[2] Plaintiffs have failed to timely respond to these three Motions, even though they were granted additional time to do so by the Court on July 16, 2007.  (Ord. of 7/16/2007 Grant. Pls.' Mot. Ext. Time Resp. Defs.' Mots.)

pleadings, the appellees' motion was untimely."). Ransom clearly brings this Motion well after filing his answers in this case.

However, Ransom did raise the defense of insufficient service of process in his answers (Ans. 1; Ans. Am. Compl. 2) so as to avoid the waiver of that defense under Rule 12(h)(1). A respected civil procedure treatise notes that "federal courts have allowed untimely [12(b)] motions if the defense has been previously included in the answer. In this context, the motion becomes tantamount to a preliminary hearing under Rule 12(d)." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004). Therefore, the Court may nevertheless entertain Ransom's motion, though not under Rule 12(b).

Second, the Court is troubled by Ransom's delay in pursuing his insufficiency of service of process defense. Ransom's counsel filed answers on his behalf on March 21, 2006 and June 19, 2006. On March 2, 2007 — nearly a year after the first answer and more than eight months after the second answer — Ransom now moves the Court to dismiss based upon improper service of process by the plaintiffs. The Court is cognizant of many cases from diverse jurisdictions which have held that a defendant may forego a lack of personal jurisdiction, improper venue, or insufficiency of service of process defense "by failing to pursue the defense after including it in an answer." Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc., 104 Fed. Appx. 376, 379-80 (5th Cir. 2004)

5

(unpublished opinion).

The pertinent facts of this case present a close call as to whether the Court should countenance Ransom's defense or declare it waived and/or forfeited.  The United States Court of Appeals for the Fifth Circuit has not yet espoused a bright line test to use for such a determination.  Id. at 380.  However, this Court is not wholly without guidance.

In Brokerwood, the Fifth Circuit reversed the district court's ruling that the defendant had waived its defense of lack of personal jurisdiction even though the defense had been raised in its answer.  Id.  Although the defendant had engaged in significant discovery, the appellate court did not find such participation to be "sandbagging" that merited waiver, given that no counterclaims had been filed or adjudication on the merits sought by the defendant.  Id.  The court also focused on the fact that the defendant repeatedly raised its objection to jurisdiction at each stage of discovery.  Additionally, the lapse of seven months between the defendant's answer and motion to dismiss was considered benign compared to a two and a half year delay in another case. Id. at 381.

Applying Brokerwood to the facts of this matter, a review of the docket shows that Ransom engaged in much discovery before urging his defense by motion:  Ransom noticed his service of disclosures (docket entry no. 25), twice noticed his responses to

interrogatories (docket entries nos. 34, 42), moved to compel initial disclosures (docket entry no. 36), noticed service of interrogatories (docket entry no. 37), noticed service of requests for production (docket entry no. 38), and motioned or noticed his intent to depose six persons (docket entries nos. 40, 41).  As Brokerwood indicates, substantial involvement in discovery is not dispositive; however, Ransom did not object to the insufficiency of service of process throughout discovery as did the defendant in Brokerwood.

On the other hand, Ransom has neither filed any counterclaims nor did he seek adjudication on the merits of any of the plaintiffs' claims before filing this Motion.  The passage of a year between Ransom's first answer and this Motion is temporally more analogous to the approved seven month interim than the discommended thirty month period mentioned in Brokerwood.  In addition, Ransom did not wait to pursue his Motion on the eve of trial.[3]  Moreover, should Ransom prevail on this defense, it is not evident that the plaintiffs would be time barred from refiling their claims against Ransom (although the Court does not so hold).

Upon a balanced review of the facts through the Brokerwood lens, the Court finds that Ransom has narrowly not waived his defense of insufficiency of service of process.

_____

[3] At the time the Motion was filed, trial was scheduled for August 2007, some five months distant.  (docket entry no. 35.)

7

2. The Merits of Ransom's Motion

When Kirby Tate filed jis original complaint on September 6, 2005, he was proceeding pro se.  By its Order dated September 27, 2005, this Court denied his Motion for Leave to Proceed In Forma Pauperis.  On March 21, 2006, Ransom raised the defense of insufficiency of service of process in his answer.  (Ans. 1.) Counsel was obtained by Kirby Tate in May 2006.  (See Pl.'s Mot. Enlarge. Time File Amends. Compl. 2.)  Tate amended his complaint and joined Christa Tate on June 16, 2006, who was represented by the same counsel retained by her husband.  On June 19, 2006, Ransom again raised the defense of insufficiency of service of process. (Ans. Am. Compl. 2.)

Federal Rule of Civil Procedure 4(m) states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Under Federal Rule of Civil Procedure 4(c)(1), "the plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m) . . . ."[4]  Even pro se plaintiffs are

---

[4] Only when in forma pauperis status is granted may another person (an officer of the court) be made responsible for service of process.  See Fed. R. Civ. P. 4(c)(2); 28 U.S.C. § 1915(d).  As noted, Tate was not allowed to proceed in forma pauperis.

required to effectuate service of process within the 120 day period set forth in Rule 4(m). Sys. Signs Supplies v. U.S. Dep't of Justice, Wash., D.C., 903 F.2d 1011, 1013 (5th Cir. 1990). Thus both Kirby (even when he was proceeding pro se) and Christa Tate (who has been represented by counsel since her joinder in the action) were at all times obliged to effectuate service of process upon Ransom as prescribed by Rule 4(m).

"[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." Carimi v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir. 1992). In the matter sub judice, the plaintiffs have failed to show that service of process was properly accomplished upon Ransom. The 120 day time limit for service under Rule 4(m) has clearly expired, and the plaintiffs have not attempted to show good cause for their failure to comply with Rule 4(m). The defense of insufficiency of service of process was preserved in both of Ransom's answers and is properly before the Court on his Motion. Consequently, pursuant to Federal Rule of Civil Procedure 4(m), the Court finds that Ransom's Motion is well taken and that all claims against him are dismissed without prejudice to the plaintiffs.[5]

B. *Defendants' Motion to Dismiss*

---

[5] Kirby Tate directed his racial discrimination claim toward Ransom only (Compl. 4C); therefore, that claim is no longer present in this action.

*for Failure to State a Claim*[6]

"The standard for dismissal under Rule 12(c) is the same as that for failure to state a claim under Rule 12(b)(6)." <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004).  Thus when examining a motion for judgment on the pleadings, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)).  "To survive a [motion for judgment on the pleadings], the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  <u>In re Katrina Canal Breaches Litigation</u>, ___ F.3d ___, 2007 WL 2200004, at *10 (5th Cir. Aug. 2, 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  <u>Id.</u>

1. Kirby Tate's Remaining Claims

The two defendants left in the case (Waller and Lindsey) would have this Court dismiss all other claims brought by Kirby Tate

---

[6] Because this Motion was — like Ransom's motion based upon insufficiency of service of process — filed after the pleadings closed, it is untimely under Rule 12(b); however, it is properly construed by this Court as a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). <u>Greninger</u>, 188 F.3d at 324.

because he has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997 et seq.  Section 1997(e)(a) of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As the United States Supreme Court noted in its most recent Term, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, ___ U.S. ___, 127 S. Ct. 910, 918-19, 166 L. Ed. 2d 798 (2007).  However, one of the Court's central holdings was that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Id. at 921.

In this case, Kirby Tate did not plead exhaustion as to the remaining claims nor was he required to do so under the authority of Bock.  The defendants properly pled the affirmative defense of failure to exhaust administrative remedies in their answers. (Ans. 3; Ans. Am. Compl. 6.)  While Bock left open the possibility that "failure to exhaust [could] be a basis for dismissal for failure to state a claim[,]" 127 S. Ct. at 921, the Court does not find that

11

the pleadings[7] reveal Kirby Tate's failure to exhaust administrative remedies for the remaining claims. Therefore, because Tate has pled enough facts to make his claims facially plausible, the defendants' Motion is denied insofar as it is predicated upon Tate's failure to exhaust.

2. Christa Tate's Loss of Consortium Claim

The remaining defendants also urge the Court to find that Christa Tate has failed to state a claim for loss of consortium. The amended complaint does not mention whether Christa Tate brings her claim under § 1983 or pursuant to state law.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The United States Supreme Court has stated that "[b]y the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has

____

[7] "In adjudicating a motion for judgment on the pleadings, the court may look only to the pleadings and must accept all facts pleaded therein as true." Webb v. City of Dallas, Tex., 314 F.3d 787, 790 (5th Cir. 2002).

12

deprived him of that right acted under color of state law." <u>Gomez v. Toledo</u>, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980). In the amended complaint, Christa Tate does not specifically allege that loss of consortium is a <u>federal</u> right of which she has been deprived.

The Court is unaware of any law of the United States which designates consortium with one's spouse as a right. The Court furthermore surmises that the most plausible locus of such a right in the Constitution would be within the liberty component of Due Process Clause of the Fourteenth Amendment. However, the Court is not aware of any court which has found consortium with one's spouse to be a constitutionally protected substantive liberty interest, the deprivation of which may be redressed under § 1983. Neither the Supreme Court nor the Fifth Circuit has addressed the issue; however, the courts which have dealt with the question directly have generally failed to recognize such a right.

In <u>Niehus v. Liberio</u>, 973 F.2d 526 (7th Cir. 1992), the United States Court of Appeals for the Seventh Circuit held that the wife of a man who had been injured by the police could not recover damages <u>under § 1983</u> for loss of consortium with her husband because consortium was not a liberty interest protected by the Constitution. Similarly, in <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir. 1994), the United States Court of Appeals for the Fourth Circuit held that a wife and minor child could not state a claim under the

Fourteenth Amendment for the loss of the love and support of their deceased husband/father.

A recent federal case from Connecticut collected the extant case law and concluded that "[f]ederal courts have generally held . . . that plaintiffs alleging federal civil rights violations may not sue for the loss of companionship of a family member." Rzayeva v. U.S., 492 F. Supp. 2d 60, 83 (D. Conn. 2007). The Rzayeva court dismissed the plaintiffs' claims for loss of society and consortium because they were not cognizable under federal law. Id. at 84. In Gresham v. Dell, 630 F. Supp. 1135, 1137 (N.D. Ga. 1986), the court noted that a claim for loss of consortium "is nothing more than a state law tort which does not rise to the level of a constitutional tort." The district court in Lopez v. Ruhl, 584 F. Supp. 639, 650 (W.D. Mich. 1984), held that a plaintiff failed to state a claim for relief under § 1983 when she sued for the loss of support and companionship of her husband. Similarly, another court has stated that "the right to consortium is not within the spectrum of interests guaranteed by the Constitution or federal law." Walters v. Village of Oak Lawn, 548 F. Supp. 417, 419 (N.D. Ill. 1982).

The Court is well aware that "consortium" encompasses a constellation of benefits attendant to a marital relationship.[8]

---

[8] The United States Court of Appeals for the Fifth Circuit has defined the deprivation of consortium "to include tangible losses (support and services provided by the other spouse) and intangible (non-pecuniary) hurt (love, companionship, society, affection, sexual relations, comfort and solace)." Bodden v. Am. Offshore, Inc., 681 F.2d 319, 326 n.26 (5th Cir. 1982).

Doubtless, some liberties which have been held to be substantively protected by the Due Process Clause may be tangentially related to the umbrella term "consortium."   However, consortium is sui generis; it is a creature of state tort law, and thus far an alien to enjoying the status of a right under the federal "Constitution or laws."   To the extent Christa Tate invites this Court to recognize consortium as a liberty interest substantively guarded by the Constitution, the Court declines to do so, because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Washington v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 138 L. Ed. 2d 772 (1997).   The Court refuses to expand the substantive protections of the Due Process Clause and "place the matter outside the arena of public debate and legislative action."   Id.

Because Christa Tate has not "allege[d] that some person has deprived [her] of a federal right[,]" Gomez, 446 U.S. at 640, the Court finds that she has failed to state a claim for which relief can be granted under § 1983.   Therefore, judgment on the pleadings is appropriate for the remaining defendants with prejudice to Christa Tate, insofar as she brings her loss of consortium claim pursuant to § 1983.

   C. The Court Raises Its Own Motion to Dismiss for Failure
      to State Claims Upon Which Relief Can Be Granted

   According to 42 U.S.C. § 1997(e)(c),

      [t]he court shall on its own motion or on the

15

motion of a party dismiss any action brought
with respect to prison conditions under
section 1983 of this title, or any other
Federal law, by a prisoner confined in any
jail, prison, or other correctional facility
if the court is satisfied that the action is
frivolous, malicious, fails to state a claim
upon which relief can be granted, or seeks
monetary relief from a defendant who is immune
from such relief.

While the defendants have moved to dismiss for failure to state a
claim on several bases, the Court recognizes that other grounds
exist (not raised by counsel) upon which two of Kirby Tate's claims
must be dismissed.

First, the claim brought against Dolan Waller for negligence
is not cognizable because "[t]he negligent act of an official
causing loss or injury will not, standing alone, state a claim
under 42 U.S.C. § 1983." Reed v. Moore, 2004 WL 2980187, *1 (5th
Cir. Dec. 17, 2004) (unpublished opinion).  Quite simply, "many
acts that might constitute violations of state tort law do not
amount to constitutional violations." Lewis v. Woods, 848 F.2d
649, 651 (5th  Cir. 1988).  While a constitutional violation may
result from "tortious conduct exceeding mere negligence but not
quite rising to the level of intentional, e.g., deliberate (or
conscious) indifference, recklessness, or gross negligence[,]"
Salas v. Carpenter, 980 F.2d 299, 307 (5th Cir. 1992), Kirby Tate
does not allege any facts in his complaints against Dolan Waller
which could support a claim greater than negligence.

Second, Tate's claim for malicious prosecution against Thelma

16

Lindsey is not viable because the United States Court of Appeals for the Fifth Circuit has held that "no such freestanding constitutional right to be free from malicious prosecution exists." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003); accord Figgs v. Vrazel, 106 Fed. Appx. 260, 261 (5th Cir. 2004) (unpublished opinion) ("[t]here is no longer a freestanding section 1983 claim for malicious prosecution in this circuit.").  Thus Kirby Tate has failed to state a claim on this ground as well.[9]

Kirby Tate's claims against Dolan Waller for negligence and against Thelma Lindsey for malicious prosecution are dismissed with prejudice for failure to state claims for which relief can be granted under § 1983.

### D. Defendants' Motion for Summary Judgment

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[9] However, the Court notices that the facts inartfully pled under the rubric of malicious prosecution may state a claim under § 1983 for a deprivation of procedural due process.  Tate avers that, in the disciplinary hearing before Lindsey, he requested that Ransom appear as a witness.  (Compl. 4B.)  According to Tate, Lindsey did not allow Ransom to appear.  (Compl. 4B.)  Tate also contends that Lindsey made "unfair and biased statements at the hearing," (Compl. 4C), related to having pre-judged his guilt.  (Compl. 4B.)  "Under Wolff v. McDonnell, 418 U.S. 539, 563-72, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), due process in state prison disciplinary hearings requires that: . . . (3) the charged prisoner be given the opportunity to present his side of the story and to call witnesses on his behalf; and (4) the disciplinary body be detached and neutral."  Toppins v. Day, 73 Fed. Appx. 84 (5th Cir. 2003) (unpublished opinion).  Because Tate's allegations suggest that he was not allowed to call a witness and that there was a lack of neutrality by Lindsey in conducting the hearing, he may be able to state a claim for deprivation of procedural due process.  The dismissal of the malicious prosecution claim does not affect this potential claim.

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[10]  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate."  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 252.  The nonmovant must instead

---

[10]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

1. Tate's Failure to Exhaust Administrative Remedies for His Remaining Claims

The defendants move for summary judgment on the basis that Tate has failed to exhaust administrative remedies as required by 42 U.S.C. 1997(e)(a) as to the remainder of his claims brought under § 1983.[11] (Memo. Supp. Def.'s Mot. Dis. 10-11.) The Court was unable to discern from the pleadings alone that Kirby Tate failed to exhaust; however, the Court may now consider more than just the pleadings under this Rule 56 motion.

The defendants point to pages 78-79 of the Transcript of Kirby Tate's Deposition of March 16, 2007, which read as follows:

> Q. I'm not your lawyer. I'm not going to -- my question is, is after you've reviewed your complaint, are all the administrative remedies that you went through before you filed this lawsuit, are they all attached to the back of that complaint?
>
> A. All the administrative remedy procedures that I went through are attached.

---

[11] These claims may include retaliation, deprivation of due process (discussed supra at fn.9), and unclassified others based on his allegations of the defendants' failure to follow ARP policies and procedures, the deprivation of visitation, conjugal rights, telephone calls, and job, and his subjection to additional punishments.

Defendants are correct that the attachments to Tate's complaint indicate that he sought redress only for the racial discrimination he allegedly experienced.  (Compl. 9-28.)

Because the defendants have properly supported their motion with the above sworn statement of Kirby Tate and have shown the absence in the pleadings and the remainder of the record where Tate pursued administrative remedies for a claim other than racial discrimination, "the burden shifts to [Tate] to show that a summary judgment should not be granted."  Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

Tate has not responded to the defendants' arguments for summary judgment in any way whatsoever.  The Court notes that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006) (quoting Ragas, 136 F.3d at 458). Consequently, the defendants' Motion is well taken and a judgment as a matter of law is appropriate in their favor without prejudice to Tate as to all of the remaining claims brought by him under § 1983.

*E. Miscellaneous Matters*

The Court is unaware of any claims predicated upon federal law remaining in this case.  Therefore, to the extent that the plaintiffs have brought claims based upon state law for negligence,

malicious prosecution, retaliation, due process violations, loss of consortium, or otherwise, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and dismisses such claims without prejudice to the plaintiffs.  This exercise of discretion is in keeping with the Fifth Circuit's "'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case." Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006).

In addition, the Court finds no basis for diversity jurisdiction under 28 U.S.C. § 1332, given that the record does not clearly reveal the citizenship of the parties nor the existence of an amount in controversy in excess of $75,000.00.

There being no claims of any sort remaining before the Court, the action will be dismissed.

**IT IS HEREBY ORDERED** that the defendant Francis Ransom's Motion to Dismiss for Failure to Serve Process [**docket entry no. 44**] is **GRANTED** without prejudice as to all claims brought against Francis Ransom by the plaintiffs.

**IT IS FURTHER ORDERED** that on the Court's own Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, Kirby Tate's claims for negligence against defendant Dolan

21

Waller and malicious prosecution against defendant Thelma Lindsey are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the defendants' Motion to Dismiss for Failure to State a Claim [**docket entry no. 53**] is **GRANTED IN PART** with prejudice as to Christa Tate's claim for loss of consortium under § 1983 and **DENIED IN PART** as to as to all of Kirby Tate's remaining claims brought under § 1983.

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment [**docket entry no. 53**] is **GRANTED** without prejudice as to all remaining claims brought by Kirby Tate under § 1983.

**SO ORDERED,** this the ___10th___ day of September, 2007.

___s/ David Bramlette___
UNITED STATES DISTRICT JUDGE